CONTINENTAL CASUALTY COMPANY

v.

UNITED STATES.

Edward J. Breen, Paul F. Harron and Mitchell W. Miller, Trustees in Bankruptcy, Pennsylvania Drydock and Shipbuilding Co., Inc., Third Parties.

No. 63–57.

United States Court of Claims.

Feb. 11, 1959.

See also 156 F.Supp. 942.

S. Gordon Elkins, Philadelphia, Pa., for plaintiff. Daniel Mungall, Jr., Philadelphia, Pa., on the brief.

Lawrence F. Ledebur, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Leavenworth Colby, Washington, D. C., was on the memorandum.

Clarence R. Reardon, Baltimore, Md., for third parties.

MADDEN, Judge.

The plaintiff, Continental Casualty Company, wrote payment and performance bonds as surety for Pennsylvania Drydock and Shipbuilding Co., Inc., on contracts which the latter company had with the United States. Pennsylvania Drydock went into bankruptcy leaving unpaid bills incurred in its performance of the contracts. The plaintiff paid those bills pursuant to its obligation on its bonds. The United States has not paid Pennsylvania Drydock all that that company was entitled to under its contracts.

The plaintiff brought this suit against the United States alleging that it had paid out $64,451.53 to satisfy claims of laborers and materialmen covered by its bonds; that the United States still has in its hands $70,308.30 which Pennsylvania Drydock earned under its contract; and that the plaintiff is entitled to recover from the United States the $64,-451.53 which it paid out pursuant to its bonds.

The United States in its answer admits that $71,388.90 of the contract earnings of Pennsylvania Drydock have not been paid, but asserts that Pennsylvania Drydock is indebted to it in the sum of $52,446.99, leaving a balance of only $18,941.91 owing to that company. It asserts that it would have paid the $18,941.91 if it had not been for conflicting claims to it made by the plaintiff, Continental Casualty, and by the trustees in bankruptcy of Pennsylvania Drydock.

The United States made a motion, pursuant to our Rule 19(a) (1), 28 U.S.C.A., for service on the trustees in bankruptcy of Pennsylvania Drydock as third parties. The trustees answered and asserted their claim to $70,570.30 as the amount which the United States still owed on the Pennsylvania Drydock contract.

The United States responded to the answer and claim of the trustees in bankruptcy, and asserted that, though $71,388.90 was still unpaid on the Pennsylvania Drydock contract, it was indebted in the amount of only $18,941.91 because of debts which Pennsylvania Drydock owed to it; that it would have paid the $18,941.91 except for the conflicting claims of the plaintiff, Continental Casualty, and the trustees.

The plaintiff has filed a motion to dismiss the answer of the trustees in bankruptcy. That motion is the subject of the instant proceeding. It asserts that the trustees' answer fails to set forth facts which would entitle them to any of the money in the hands of the United States.

In response to the plaintiff's motion the United States has filed a memorandum stating that it neither joins in nor opposes the plaintiff's motion. It takes the position of a stakeholder of $18,941.91, indifferent as to the outcome of the contest between conflicting claimants to the stake.

The trustees in bankruptcy of the Pennsylvania Drydock, of course, oppose the plaintiff's motion to dismiss their answer and claim. They say that when the plaintiff surety paid the debts of Pennsylvania Drydock to its laborers and materialmen, it became subrogated to the claims of the laborers and materialmen against Pennsylvania Drydock. But, say the trustees, the laborers and materialmen were only general creditors of Pennsylvania Drydock, and therefore would have participated only as general creditors in the assets of the bankrupt. If the plaintiff is allowed to recover the unpaid balance from the United States, it will, in effect, have a priority over the other general creditors in that asset of the bankrupt, thus having a more favorable position than the laborers and materialmen in whose shoes it is entitled to stand.

The plaintiff answers the trustees by saying that by making the payments on its bonds, it was not paying the debts of the contractor to laborers and materialmen, general creditors of the owner, but was satisfying the obligation of the contractor to the United States, the owner, and thereby became subrogated to the right of the United States against the contractor. Since that right was a preferred right, i. e., the right of setoff, the right to withhold money otherwise due the contractor, the surety claims that it has the right to the money withheld.

Was the plaintiff, the surety, satisfying an obligation of the contractor to the United States when it paid the contractor's laborers and materialmen? The United States required of the contractor a payment bond, as a condition of awarding the contract to it. See Act of August 24, 1935, 49 Stat. 793, 40 U.S.C.A. § 270a. The United States did not, of course, promise to pay the contractor's laborers and materialmen. United States v. Munsey Trust Co., 332 U.S. 234, 241, 67 S.Ct. 1599, 91 L.Ed. 2022. Nor did the law give them a lien upon the structure built for the United States if they were not paid by the contractor. U. S. for Use and Benefit of Hill v. American Surety Co., 200 U.S. 197, 203, 26 S.Ct. 168; Equitable Surety Co. v. U. S., to Use of W. McMillan & Son, 234 U.S. 448, 455, 34 S.Ct. 803, 58 L.Ed. 1394; Munsey Trust Co., supra, 332 U.S., at page 241,

67 S.Ct. 1599, 91 L.Ed. 2022. Yet the United States was not willing that labor and materials incorporated in the structures built for it should go unpaid for, and hence insisted upon the payment bond.

The United States, in requiring the contractor to agree to pay its laborers and materialmen, and in requiring it to furnish a bond to insure that they would be paid, acquired a right against the contractor that they should be paid. We suppose that, if in such a situation the bondsman should, during the performance of the contract, become insolvent so that it could not, if need be, pay the laborers and materialmen, the United States could withhold money otherwise due the contractor and pay them. When, therefore, the plaintiff surety paid Pennsylvania Drydock's laborers and materialmen, it was satisfying two obligations of the contractor, one to its laborers and materialmen who were general creditors, the other to the United States which was a preferred creditor because of its possession of funds which could be used as an offset against the contractor. By satisfying the latter obligation, the plaintiff surety became entitled to be subrogated to the security which the United States held, i. e., the funds in its hands. This problem is thoroughly treated in Judge Whitaker's opinion in National Surety Corporation v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724. See also Hadden v. United States, 132 F.Supp. 202, 132 Ct.Cl. 529; Royal Indemnity Co. v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736.

The plaintiff's motion to dismiss the answer of the third parties, the trustees, will nevertheless not be granted. If, as this litigation progresses, it should develop that the alleged debts of some $52,000 of Pennsylvania Drydock to the United States are not proved, or that for any reason the proved claims of the plaintiff do not exhaust the funds owed Pennsylvania Drydock by the United States, the third parties would be entitled to a judgment.

The plaintiff's motion to dismiss the answer of the third parties is denied.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

LARAMORE, Judge, concurring in the result:

I concur that plaintiff's motion to dismiss the answer of the trustees should be denied but rather for the reasons given in my dissenting opinion in Hadden, Trustee v. United States, 132 Ct.Cl. 529, 532.