The **HOME INDEMNITY COMPANY**,
Plaintiff,

v.

**UNITED STATES** of America,
Defendant.

Civ. A. No. 16313–3.

United States District Court,
W. D. Missouri, W. D.

April 9, 1970.

Richard B. McKelvey, of Tucker, Murphy, Wilson, Lane & Kelly, Kansas City, for plaintiff.

Charles E. French, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## ORDER GRANTING JUDGMENT FOR PLAINTIFF; JUDGMENT FOR PLAINTIFF

BECKER, Chief Judge.

This is an action brought by plaintiff under the Tucker Act, Section 1346, Title 28, United States Code, to recover from defendant a portion [1] of the monies due plaintiff as surety and subrogee of a defaulting Government contractor which were erroneously, plaintiff contends, paid by the Government to the defaulting contractor and the Internal Revenue Service.

The facts in this case are not in dispute. They have been stipulated and the case has been submitted by the parties on the stipulation and briefs. The stipulated facts are essentially as follows: that on or about June 5, 1963, A. T. Perry Pipe Line Construction, Inc. ("Perry" hereinafter) entered into a contract with the Government for the construction of improvements at Forbes Air Force Base, Topeka, Kansas; that on the same date, plaintiff, as surety, entered into a contractual agreement under the Miller Act, Section 270a et seq. of Title 40, United States Code, whereby plaintiff undertook to insure performance and payment by Perry, to all persons supplying labor and materials in the prosecution of the work under the construction contract; that Perry failed to perform all of the work of construction called for by the construction contract and failed to pay "all laborers and mechanics for labor performed and for material and equipment rental which was used on or rented in the performance of said contract"; that the "remaining work * * * to complete the contract was performed under the supervision of Mr. Floyd Carr, Supervisor of * * * Perry * * * on May 21, 1964, and May 22, 1964"; that "[p]laintiff's attorneys advised defendant by letter dated June 4, 1964 * * * that these remaining items were all corrected, and Mr. A. H. Stratton [for defendant] advised plaintiff by letter dated June 5, 1964, * * * that all noted discrepancies on the contract were completed, and approved for final payment"; that "plaintiff paid the cost of correcting these discrepancies, $100.00, on or about August 31, 1964"; that meantime on April 21, 1964, plaintiff's attorneys "wired and wrote Mr. A. H. Stratton, contracting officer, Forbes Air Force Base" asserting their right to the monies (on behalf of plaintiff) in the hands of the Government due the contractor; that "[b]y letter dated April 24, 1964," Stratton acknowledged receipt of the wire, stating that "the balance of unpaid

---

1. According to the stipulation of facts entered into by the parties, plaintiff paid out some $59,556.01 to persons who furnished labor, materials and rental equipment. Further, the lien was asserted on $10,354.79 in the hands of the Government. But plaintiff, in order to bring its claim within the limits of the Tucker Act, claims only $10,000 of the amounts in the case at bar.

moneys as of April 17, 1964, remaining in the hands of defendant was $10,354.-79"; that, notwithstanding the wire of April 21, 1964, "[o]n or about June 22, 1964, the defendant, the contract being completed to defendant's satisfaction, paid out of the aforesaid balance of contract moneys $6,451.25 to said contractor, A. T. Perry Pipe Line Construction, Inc., and $3,903.54 to the Internal Revenue Service, which had a levy on the funds due the contractor under this contract, without first communicating with plaintiff or its attorneys prior to making said payments" and without their consent; that thereafter "plaintiff, pursuant to the terms and obligations of the aforesaid payment and performance bonds * * * paid out of its own funds the sum of $59,556.01 to persons who furnished labor, materials and rental equipment in the prosecution of the work provided for in the construction contract * * * which included the sum of $100.00 paid in the completion of said project" and informed defendant of such payments by letter dated June 18, 1965; that defendant by letter dated July 8, 1965, informed plaintiff of payment of the retained amounts to the defaulting contractor and the Internal Revenue Service; and that plaintiff demanded payment of the equivalent amount by letter dated July 21, 1965, which was refused by defendant's letter dated October 19, 1965.

■■ Venue appears to be improper in this action. Under Section 1402 of Title 28, an action of this type is to be brought "only * * * in the judicial district where the plaintiff resides." Plaintiff was incorporated in New York and has its principal place of business there. It is the plain import of Section 1402 that "in actions other than tax recovery suits, corporate residence under § 1402 would apparently be limited to the district where the corporation is domiciled, i.e., its place of incorporation." 1 Moore's Federal Practice ¶ 0.144 [11], p. 1640. Under the provisions of Section 1406(b), Title 28, U.S.C., however, venue may be waived by appearing and contesting the merits of the action or by otherwise not raising a seasonable objection thereto. And it has been held that moving to dismiss without objecting to venue constitutes a waiver of the objection. *Id.* ¶ 0.146 [6], pp. 1912–13, n. 7. Defendant has raised no objection to venue; has answered and has challenged the merits of the action, including jurisdiction; and has thereby waived its objection in respect of venue.

■ On the merits, it is unquestionable that under the applicable law plaintiff is entitled to recover $10,000 (the maximum which can be recovered in this case under the Tucker Act) of the $10,354.79 paid by the Government to the defaulting contractor and the Internal Revenue Service. The Miller Act, Section 270a et seq., Title 40, U.S.C., requires every Government contractor (on contracts exceeding $2,000 in amount) to obtain a performance bond and a payment bond. The well settled law in respect of the surety on a payment bond under the Miller Act is that when the surety pays laborers and materialmen of a defaulting contractor, the same surety becomes subrogated to their rights to the monies due the defaulting contractor in the hands of the Government. Pearlman v. Reliance Insurance Company, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190; Henningsen v. United States Fidelity & Guaranty Co. (C.A. 9) 143 F. 810, affirmed 208 U.S. 404, 28 S.Ct. 389, 52 L. Ed. 547; Continental Casualty Co. v. United States, 169 F.Supp. 945, 145 Ct. Cl. 99; In re Cummins Const. Corp. (D. Md.) 81 F.Supp. 193; New York Cas. Co. v. Zwerner (N.D.Ill.) 58 F.Supp. 473; United Pac. Ins. Co. v. United States, 362 F.2d 805, 176 Ct.Cl. 176; Maryland Casualty Co. v. Lincoln Bank & Trust Co. (W.D.Ky.) 18 F.Supp. 375; Hanover Insurance Co. v. United States (S.D.N.Y.) 279 F.Supp. 851; Maryland Casualty Co. v. United States, 100 Ct.Cl. 513; 17 Am.Jur.2d Contractors' Bonds § 107, pp. 283–4. It is equally well established that the right of subrogation relates back to the date of the suretyship agreement. Pearlman v. Reliance Insur-

ance Company, *supra*; New York Cas. Co. v. Zwerner, *supra;* Henningsen v. United States Fidelity & Guaranty Co., *supra*; American Fidelity Co. v. National City Bank of Evansville, 105 U.S.App.D.C. 312, 266 F.2d 910; Glenn v. American Surety Co (CA. 6) 160 F.2d 977.

■■ The Government contends, to the contrary, (1) that there is no jurisdiction of this cause under Section 1346 of Title 28, U.S.C., because there is no "express or implied" contract between the surety and the Government; (2) that the right of subrogation of a surety on a payment bond, unlike a performance bond, does not arise against the Government under the Miller Act; and (3) that the "relation back" theory is inapplicable because the subrogation does not arise until the payment of the moneys and the Government had previously paid the contractor and the IRS. All of the foregoing authorities, however, are contrary to defendant's position. In Hanover Insurance Company v. United States, *supra*, it was expressly held that a federal district court had jurisdiction of a surety's action against the United States based upon the surety's paying the contractor's debts to materialmen under Section 1346. In support of its contention that the surety is subrogated only to the rights of the materialmen and not to those of the contractor, defendant cites Barrett v. United States, 367 F.2d 834, 837, 177 Ct.Cl. 380, and United States v. Munsey Trust Co., 332 U.S. 234, 241, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022, to the effect that "nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation." This reasoning is countered, however, by the recent holding in Pearlman v. Reliance Insurance Co., *supra*, to the following effect:

"We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it. Consequently, since the surety in this case has paid out more than the amount of the existing fund, it has a right to all of it." 371 U.S. at 141, 83 S.Ct. at 237, 9 L.Ed.2d at 196.

■ Finally, in support of its argument that the relation back theory cannot apply and that the surety's right to these funds cannot in any case prevail against the right of the United States to collect taxes, defendant cites Barrett v. United States, *supra*. This was a Court of Claims case which held that the right of the United States to offset its credits owing by the contractor is superior to that of the payment bond surety's. In that case, however, a notice of levy for the tax amounts had been filed with the Government agency before the surety became liable to the materialmen by virtue of their obtaining a judgment against him. The stipulation of facts in this case does not assert that a lien for taxes was established by the Government which would have been superior to that of the surety under Sections 6321 and 6323, Title 26, U.S.C., prior to the notification of the Government by the surety of its claimed lien. In such an instance, the case of Glenn v. American Surety Co. (C.A. 6) 160 F.2d 977, controls with its holding that

"* * * a surety who makes good under his contract of suretyship upon default of the principal contractor, acquires an equitable lien against the unpaid balance in the hands of the person in whose favor the bond runs, and that such equitable lien upon payment by the surety relates back to the date of the contract and is superior to a claim of the United States for unpaid taxes for periods subsequent to

the date of the contract of suretyship, although prior to the date of payment by the surety." :60 F.2d at 982.

See also American Fidelity Co. v. National City Bank of Evansville, 105 U.S. App.D.C. 312, 266 F.2d 910.

With respect, then, to the payments made by the Government to the contractor, there is no question that they were made in violation of the surety's rights under Pearlman v. Reliance Insurance Company, *supra*, and the other authorities cited above.

■ In respect of the amounts paid to the Internal Revenue Service for taxes of the contractor, the Government asserts that it exercised its right of set-off in accordance with the holding in United States v. Munsey Trust Co., *supra*, that:

> "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" 332 U.S. at 239, 67 S.Ct. at 1602, 91 L.Ed. at 2027.

Assuming that the tax in this case was an undisputed claim, the right of set-off recognized in federal jurisprudence does not include the right of the United States to set-off taxes owing to the United States. 20 Am.Jur.2d, Counterclaim, Recoupment and Setoff § 112, p. 328; United States v. O'Grady, 22 Wall. (89 U.S.) 641, 22 L.Ed. 772. If this were not the rule, the Government would otherwise avoid the statutory scheme provided for the collection of taxes, whereby certain privileges and processes are afforded to the taxpayer. Cf. Barrett v. United States, *supra*; Johnson Service Co. v. Roush, 57 Wash.2d 80, 355 P.2d 815. Therefore, it is entirely consistent with the rule enunciated in United States v. Munsey, *supra*, to permit the surety to recover the amounts paid for taxes of the contractor as well as those paid for his debts to laborers and materialmen.

It is therefore

Ordered and adjudged that judgment herein be entered in favor of plaintiff and against defendant in the sum of $10,000 and costs.