**The HOUSING AUTHORITY OF the CITY OF MEXICO, MISSOURI, Plaintiff,**

v.

**GENERAL INSURANCE COMPANY OF AMERICA and United States of America, Defendants.**

No. 73C419(3).

United States District Court,
E. D. Missouri, E. D.

May 7, 1974.

———————

Edward D. Hodge, Edwards, Seigfreid, Runge & Hodge, Inc., Mexico, Mo., for plaintiff.

Donald J. Stohr, U. S. Atty., for the United States.

Francis L. Kenney, Jr., Kenney, Leritz & Reinert, St. Louis, Mo., for Gen. Ins. Co.

WANGELIN, District Judge.

*Memorandum and Order*

This matter is before the Court upon the cross motions of the defendants for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure.

This is an interpleader action which was removed from the Circuit Court of Audrian County, Missouri. The interpleaded fund in the amount of $8,222.95 is the balance resulting from a Contract between the plaintiff Housing Authority of the City of Mexico, Missouri, (herein Authority) and the Contractor, Plez Lewis & Son, Inc. (herein Plez). On August 6, 1962, the plaintiff entered into a contract agreement with Plez for the construction of seventy-four dwelling units, management and community buildings, and site development in connection with housing project MO–10–1, Phase II, sites I and II located in Mexico, Missouri. Said construction project was bonded by the defendant General Insurance Co. (herein General) by its Performance and Payment Bond No. 477257 in the penal sum of $851,342.00. Said bond was executed on August 6, 1962, and created the relationship of General as surety and Plez as principal.[1] Prior to the completion of the aforesaid project, Plez defaulted and was declared a bankrupt. General, pursuant to its obligation as surety, made payments in 1965, 1966 and 1967 to various claimants who had performed labor or supplied material or services under the housing contract in the amount of $8,643.20. The plaintiff prior to the default of Plez had retained the sum of $8,222.95 of the contract balance which was to have been paid upon satisfactory completion of the construction under the contract agreement. Such sum is the interpled amount. On May 5th, 1965, a notice of levy was served upon the plaintiff by a delegate of the Secretary of the Treasury demanding payment of all sums of

1. The record indicates that on February 17, 1959, Plez executed an indemnity agreement in favor of the insurance company and assigned all rights of Plez in the contract between Plez and the Authority. However, such agreement is not essential to the determination of this action.

money or other obligation owing to Plez. Said levy was made pursuant to tax assessments charged against the taxpayer Plez, the first such assessment being made on January 29, 1965 for withholding and FICA taxes and interest in the amount of $15,351.14 as taxes and $456.85 as interest. The plaintiff has paid into the registry of this Court the sum of $8,222.95 and claims no interest in the amount but seeks a determination as to the party lawfully entitled to it.

General contends that with the payments to the various claimants pursuant to its obligation as surety it became subrogated to the rights to the monies due the defaulting contractor in the hands of the Authority. General further contends that it has an equitable lien on said monies which relates back to the date of the suretyship contract (August 6, 1962) and such claim is superior to a claim of the United States for unpaid taxes for periods subsequent to the aforesaid contract. In contravention, the Government argues that the tax lien takes priority and is attached to all property and rights to property of the taxpayer, Plez, including the amounts retained by Authority.

The issue as the Court views it is whether the rights of General gained through subrogation based on a contract of suretyship dated August 6, 1962, is superior to the tax lien of the United States which arose prior to the payments by the surety? This Court holds that the rights of General have priority over the claims of the United States. For support of this decision the language of Glenn v. American Surety Co., 160 F.2d 977 (6th Cir., 1947) as cited in Home Indemnity Co. v. United States, 313 F.Supp. 212 (W.D.Mo., 1970) at 215–6 is appropriate:

. . . a surety who makes good under his contract of suretyship upon default of the principal contractor, acquires an equitable lien against the unpaid balance in the hands of the

person in whose favor the bond runs, and that such equitable lien upon payment by the surety relates back to the date of the contract and is superior to a claim of the United States for unpaid taxes for periods subsequent to the date of the contract of suretyship, although prior to the date of payment by the surety. 160 F.2d at 982.

In accord see United States Fidelity & Guaranty Co. v. United States, 201 F.2d 118 (10th Cir., 1952); Farmer's Bank v. Hayes, 58 F.2d 34 (6th Cir., 1932)[2]; and New York Casualty Co. v. Zwerner, 58 F.Supp. 473 (N.D., Ill., 1944).

Accordingly,

It is hereby ordered that the motion of the defendant General Insurance Company of America for summary judgment be and is granted and that it shall take the fund minus attorney's fees and costs:

It is further ordered that the motion of the defendant United States for summary judgment be and is denied: and

It is further ordered that the plaintiff be and is awarded reasonable attorney's fees and costs.

2. Though the above cases deal with payment under the Miller Act, 40 U.S.C. § 270a et seq., for purposes here no distinction between subrogation under said Act and herein is relevant.