### CENTRAL NAT. BANK OF RICHMOND, VA. v. UNITED STATES.

#### No. 48217.

United States Court of Claims.

July 3, 1950.

See, also, 114 Ct.Cl. 390, 84 F.Supp. 654.

Geoffrey Creyke, Jr., Washington, D. C., Hudson, Creyke & Lipscomb, Washington, D. C., on the brief for plaintiff.

Frank J. Keating, Washington, D. C., H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER, AND LITTLETON, Judges.

HOWELL, Judge.

Plaintiff is a national banking association doing business under the National Banking Act, 12 U.S.C.A. § 21 et seq., with its place of business in Richmond, Virginia.

On October 8, 1945, T. H. Kent of Richmond, Virginia, doing business as Kent and Company, entered into a contract with the defendant to repair certain roads at the Chamberlain Village housing development, U. S. Marine Barracks, Quantico, Virginia, for the sum of $22,600. The contracting officer of the defendant was the Chief of the Bureau of Yards and Docks, Navy Department.

On December 12, 1945, Kent borrowed $21,500 from plaintiff and executed an assignment in full of the proceeds of the above-mentioned contract. On this same day plaintiff mailed written notice of said assignment, together with a true copy of the instrument of assignment to the contracting officer, the General Accounting Office, and the Central Disbursing Officer, Navy Department, Washington, D. C., as required by the contract. The notices were received in the General Accounting Office on December 18, 1945, and acknowledged on December 20, 1945; in the Bureau of Yards and Docks on December 17 and acknowledged on December 18, 1945; in the Central Disbursing Division, Bureau of Supplies and Accounts, on December 17, 1945, and acknowledged on January 3, 1946.

Notwithstanding such notices of assignment, on December 20, 1945, the Central Disbursing Office sent a check to Kent in the sum of $11,193.55. The voucher for this payment was submitted by Kent on December 5, 1945, and it arrived in the office of the Central Navy Disbursing Officer, Washington, D. C., on December 11, 1945.

No notice of the payment to Kent was given to plaintiff. Kent held the check for a short time, then cashed it and used the proceeds for his own use. Plaintiff haʋ

been paid the balance of the contract price, but has reserved the right to pursue this claim in its release.

Article 7 of the contract relating to assignments provides in part as follows:

"(b) If this contract is not classified as 'Confidential' or 'Secret' and if it provides for payments aggregating $1,000 or more, claims for moneys due or to become due to the Contractor from the Government arising out of this contract may be assigned to any bank, trust company, or other financing institution, including any Federal agency authorized to make loans. Any such assignment shall cover all amounts payable under this contract and not already paid, and shall not be made to more than one party, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract. In the event of any such assignment, the assignee thereof shall file written notice of the assignment, together with a true copy of the instrument of assignment, with (1) the General Accounting Office of the Government, (2) the contracting officer, (3) the surety or sureties upon the bond or bonds, if any, in connection with this contract, and (4) the disbursing officer designated to make payments under this contract."

Prior to the enactment of the Assignment of Claims Act of 1940, 31 U.S.C.A. § 203, assignments such as the one with which we are here dealing were expressly declared void by law. The 1940 act was intended to facilitate emergency financing of the vast war program and designed to permit established lending institutions to provide immediate funds for contracts incident to the war effort. This very purpose of the act is aptly described in its title:

"An Act

"To assist in the national-defense program by amending sections 3477 and 3737 of the Revised Statutes to permit the assignment of claims under public contracts."

Article 7 of the contract, supra, relating to assignment substantially follows the language of the Assignment of Claims Act of 1940.

■ That Congress intended to validate the very kind of assignment here involved "notwithstanding any law to the contrary governing the validity of assignments" is perfectly obvious.

Furthermore, the effect of such enactment was to place the Government in the same position as that of any ordinary debtor. United States v. Standard Rice Co., 323 U.S. 106, 65 S.Ct. 145, 89 L.Ed. 104. When a question regarding assignments as they affect the Government arises, the general law of assignments must govern.

■ Plaintiff's assignment was made pursuant to the Act of 1940 and notice thereof was given in the manner and to the officials as required. Having so complied with the act, plaintiff is entitled to that degree of protection ordinarily given to an innocent assignee who acts in good faith.

■ Generally, notice of an assignment is effective as of the time of its receipt, and according to official Government records, the plaintiff's notices were all received prior to the disbursement made to Kent on December 20, 1945. The Central Disbursing Office received the notice 3 days in advance of the disbursement; Bureau of Yards and Docks, 3 days; and the General Accounting Office, 2 days.

The Government's only defense to its apparent disregard of these notices and its action in paying over the money to Kent, the assignor, is in the nature of confession and avoidance. In effect the defendant says, "Yes, we paid this money to Kent in disregard of the rights which accrued to plaintiff under its assignment, but we were so busy at the time and our system was so complicated that we just couldn't give effect to plaintiff's assignment." Our findings 13 through 18 describe the procedure followed by the Government offices involved in dealing with assignments and in our opinion reveal that the system was not adapted to prompt and positive recognition of and compliance with notices of assignment received in the disbursing office.

The defendant maintains that a "reasonable length of time" must necessarily be given the disbursing officer within which to acknowledge an assignment so that the contract folder involved can be located and thus permit him to determine that the requirements of the statute have been complied with as far as assignments are concerned.

The Comptroller General in an opinion to the Board of Governors of the Federal Reserve System, B-26674, 22 Decis. C. G. 161, had pointed the way for the handling of important documents such as assignments. Recognizing that, in legal effect, acknowledgment of receipt was nothing more than a recognition that the documents had been received, he pointed out, "In the future they should be acknowledged without examination and the validity determined later." The Secretary of War had been advised in an opinion, B-14686, 20 Decis. C. G. 424, that where there was a dispute or question to hold up all payments and get a General Accounting Office ruling.

We can perceive of no good reason why the various offices to whom notices of assignment are to be given under the act should not be held to the same degree of responsibility and liability as any others to whom such notices are given in everyday commercial transactions. After such effect has been given, the Government is entitled to a reasonable time within which to determine their validity before final disbursement is made.

The Government having received timely notice of plaintiff's assignment paid Kent at its peril. Restatement, Law of Contracts, Sec. 170; 6 C.J.S., Assignments, § 100, page 1156. And where an erroneous payment is made by the Government it is no bar to the rightful claimant. Borcherling v. United States, 35 Ct.Cl. 311, affirmed 185 U.S. 223, 22 S.Ct. 607, 46 L.Ed. 884. A ministerial officer such as the Central Disbursing Officer could not arbitrarily, without notice to the legal holder of the claim, pay money over to a third party—in this case, Kent.

The plaintiff is entitled to recover the sum of $11,193.55 from the defendant.

Defendant says that in the event our decision should be as above indicated, then judgment should also be entered in favor of the defendant against T. H. Kent in the amount of $11,193.55 under the provisions of Section 14(b) of the Contract Settlement Act of 1944, 58 Stat. 649, 663, 41 U.S.C.A. § 114(b).

We considered the motion of the Government asking this court to issue a summons in this action against T. H. Kent in our opinion of July 11, 1949, 84 F.Supp. 654, 114 Ct.Cl. 390, and ordered that Kent be summoned. It appears that pursuant to that order summons was served on T. H. Kent on August 4, 1949, but, to date, Kent has failed to appear.

Section 14(b) of the Contract Settlement Act of 1944, supra, provides in part as follows:

"* * * Upon failure so to appear, any and all claims * * * of any such person against the United States, in respect of the subject matter of such suit or proceeding, shall forever be barred and the court shall have jurisdiction to enter judgment *pro confesso* upon any claim or contingent claim asserted on behalf of the United States against any person who, having been duly served with summons, fails to respond thereto, to the same extent and with like effect as if such person had appeared and had admitted the truth of all allegations made on behalf of the United States. * * *"

The evidence shows that the partial payment here involved in the amount of $11,-193.55 was mailed to T. H. Kent on December 20, 1945, who cashed the check and used the proceeds for his own use. Kent, therefore, has $11,193.55 which does not belong to him for which the Government is liable to plaintiff as we have decided. The Government does have a claim against him for that amount and, under the provisions of Section 14(b) of the Contract Settlement Act of 1944, Kent having been summoned and having failed to appear, this court has jurisdiction to enter judgment *pro confesso* against him.

Accordingly, judgment in favor of the defendant against T. H. Kent for the sum of $11,193.55 is hereby entered.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.